Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. SETH AMES,      } Justices.
Hon. MARCUS MORTON,

---

## Commonwealth vs. Leonard Choate.

On the trial of an indictment against a ship-joiner for burning a building which was set on fire by means of a box, the Commonwealth, after proving that the box was peculiarly adapted in its construction for incendiary purposes and no other purpose, and that the defendant possessed a workshop, and tools and materials with which such a box might be made, was permitted to put in evidence an anonymous letter written by the defendant several days before the fire to the marshal of the city where it occurred, stating that the writer had set certain other fires to buildings there, and was now out of boxes but expected a supply soon, advising the marshal then to look out, and expressing a motive for the writer's incendiary disposition; and was also permitted to prove that a similar box, which was found a month previously under circumstances tending to show that it was in use at the time for incendiary purposes, was made by the defendant at his workshop; and the jury were specially instructed, concerning this box, that the evidence that the defendant made it was not to be used to show that he made the box with which the fire in question was set, but only that he possessed the requisite skill, materials, tools and opportunity to have made it, and that this was the sole use of such evidence, unless they should "find in the one such marks as show that one hand must have made both." *Held,* that the defendant had no ground of exception.

Whether two pieces of wood were parts of the same stick of natural growth is a question for the testimony of experts.

On the trial of an indictment in defence against which an *alibi* was set up, the judge in-structed the jury that where the defendant wished them to take as an affirmative fact proved, that he was at a certain place at a certain time, the burden of proof was on him, and if he failed to sustain the burden, they could not consider it as a fact proved; but added that the burden was on the Commonwealth to show the defendant's presence at the commission of the crime, and on that question they were to consider all his evidence tending to prove an *alibi*, and if on all the evidence they entertained a reasonable doubt as to his presence, they should acquit him. *Held*, that the defendant had no ground of exception.

INDICTMENT for burning Joseph Akerman's barn and slaugh-ter-house. Trial in the superior court, before *Wilkinson*, J., who allowed this bill of exceptions :

"The evidence for the Commonwealth tended to show that Akerman's building described in the indictment was discovered to be on fire about ten o'clock in the evening of Saturday, Janu-ary 16, 1869. The fire was on the outside of the building ; and on the ground and against the building were found the charred remains of what was contended to have been a box by means of which the fire was set, about six inches square on the bottom and about twelve inches high, containing a block of wood perforated with an auger hole of the size of a candle. It was contended that it had been lined with zinc and nailed with three kinds of tacks. These remains were put in evidence. A few pine and mahogany shavings and cedar chips, some of which were partially burned, were also found with the box, which, with some burnt pieces of old carpet, an old shoe, and the pieces of a broken stone bottle, found at the same place the next morning, were also pro-duced and put in evidence. There was evidence that there was only one place in Newburyport where mahogany shavings like these produced were made. It was contended by the Common-wealth that this box, in its construction and with its contents, was peculiarly adapted for incendiary purposes, and no other.

"It appeared that the defendant was a ship-joiner by occupa-tion, and resided on Tyng Street in Newburyport, half a mile or more from the building of Akerman ; that an outbuilding on his premises was used partially as a shed and woodhouse, and par-tially as a workshop, having a bench in it. There was evidence tending to prove that the defendant was at work on pieces of board in this shop on two or three occasions when the door was

fastened on the inside. The Commonwealth contended that this and other evidence tended to prove that he was working secretly; but the defendant controverted b^th the fact and the inference, and offered evidence tending to show that there was no other mode of keeping the door shut, except by a hasp on the inside.

"The defendant left Newburyport Friday, January 22, and went to Minnesota, where he was arrested the next month. There was evidence which tended (as the Commonwealth contended and the defendant denied) to show that he left secretly and covertly. This shed and shop were searched by the officers on various occasions soon after his departure, and the articles obtained there by them were produced at the trial and put in evidence. Among these articles, were a hammer, two bits, a cold chisel, several kinds of nails and tacks, like those found in the box, a piece of zinc, two pieces of leather, some shavings, some cedar chips and pieces of cedar post, and various pieces of wood hereinafter mentioned.

"Certain pieces of wood were also produced by the city marshal of Newburyport, concerning which he testified that they were brought to his office on the night of December 18, 1868, and that they then constituted a box, with a block, perforated with an auger hole, nailed to the bottom; and that afterwards they were taken apart and put into their present condition under his direction. The defendant objected to the introduction of any evidence in regard to this box, which for convenience was called box No. 2. The district attorney stated that he proposed to show that it was made by the defendant; and thereupon the judge, under the defendant's objection, allowed the following, among other evidence, to be introduced in regard to it: Joseph W. Hardy testified that he found it in the rear of the Harris Street Church in Newburyport, on the night of December 18, 1868; that it was whole when he found it; that the block had a candle in it, lighted and partially burned, and there was a small lot of shavings in the bottom of the box, when it was opened; and that Harris Street Church is about half a mile from the defendant's house. Other witnesses testified to its condition when it was brought to the police station; and one of them said he took it apart by order of the city marshal.

" The defendant objected to the admission of any testimony that this box No. 2 was made by him; but the judge ruled that such fact, if it could be proved, was a competent fact in the case. Under this ruling, the district attorney called several witnesses, who testified that they had worked upon wood of various kinds for many years, and had skill in determining whether different pieces of wood were in fact pieces of the same, and had been at any time separated. He then exhibited to them two pieces of pine which had been found, upon two different occasions, in the shop of the defendant, and asked them to examine them in connection with the block found in box No. 2, and to state their opinion whether they were all originally parts of the same stick, and had been separated from each other. This question was objected to, but not on the ground of the want of skill on the part of the witnesses; but the judge allowed it to be put, and the witnesses testified that in their opinion these pieces all grew together as one piece of wood, and had been separated from each other. The district attorney also contended that the identity of the several kinds of nails found in box No. 2 with those found in the shop was evidence upon this subject : that the bits found in the shop would fit the auger holes in the box and the block found in it ; that the face of the hammer found in the shop corresponded with an impression upon the bottom of the box ; and that the hinges of the door to the box were made of leather similar to two small pieces found in the shop. Upon this and other evidence, the district attorney asked to be allowed to put this box and block in evidence. The defendant objected, but the judge ruled that there was some evidence that the defendant made it, and allowed it to go to the jury.

" Upon this subject, the judge instructed the jury substantially as follows : ' There is another species of evidence from which the government seeks to satisfy you that the defendant is guilty. They show you another box, and seek to prove to you that it is of similar construction and was made in the defendant's shop. The first question is, Did he make this box No. 2 ? They seek to prove this by circumstantial evidence ; and a circumstance relied upon to prove guilt may be proved by circumstantial evi-

dence, as well as by direct. If they have succeeded in satisfying you of the fact that he made box No. 2, it is not to be used to show that he made the box used at the Akerman fire, but would only be evidence that he possessed the requisite skill, materials, tools and opportunity to have made it. This is its sole use, unless you also find in the one such marks as show that one hand must have made both.'

" The district attorney also produced the following letter addressed to William H. Fitts, the city marshal, postmarked ' Newburyport, January 11, 1869,' and received by the city marshal on that day; and offered to prove that it was written by the defendant:

" ' It was lucky for the city that that old building, corner of Russia and Kent Streets, was torn down recently. Capt. Fitts, we are all out of boxes, but we expect a supply soon from Boston, then look out. Our motive is this — we want some business done here or none at all. Two of us concerned in this business. In firing the old town church we worked five nights in succession, before we got her agoing. The last night we put three gallons of kerosene on the floor; that done the business. No bell rope cut, nothing of the kind ; rope was burnt off. We crawled underneath the church. A large hole was found on the stone work on the backside sufficient to let a man crawl under. In setting the Bellville Hotel afire we used two gallons kerosene oil, which accounts for the rapid spread of the flames. When the boxes come, look out. Pro Bono Publico.'

" This was objected to; but the judge overruled the objection, and admitted the testimony of experts, who testified to their opinion (based upon a comparison of the handwriting with the genuine handwriting of the defendant) that it was written by him. The defendant objected to the competency of the letter, upon the ground that it was immaterial on this trial ; but the judge ruled that it was material and competent. The defendant asked the judge to exclude all of the letter relating to other fires; but the judge declined so to do, and suffered the whole letter to be read to the jury, and to be taken by them. This letter was put into the case before the offer of testimony that the defendant made **box** No. 2.

" Among other things, the defendant testified that he was not near the Akerman barn on the night of the fire ; and offered other evidence tending to show where he was before, at and after the time of the fire, and that he was so situated that he could not have committed this crime.   And the defendant's counsel, in arguing the case to the jury, contended that this evidence was conclusive, and that, at least, it was so strong as to leave a reasonable doubt in the minds of the jury.   In his charge to the jury, the judge, among other things, instructed them that where the defendant sought to establish the fact that he was at a particular place at any given time, and wished them to take it as an affirmative fact proved, the burden of proof was upon him, and if he failed in maintaining that burden, the jury could not consider it as a fact proved in the case ; that the burden however was upon the government to show that the defendant was present at the time of the commission of the offence, and as bearing upon that question the jury were to consider all the evidence offered by the defendant tending to prove an *alibi*, and if upon all the evidence the jury entertained a reasonable doubt as to the presence of the defendant at the fire, they were to acquit.

" The defendant was found guilty, and alleges the foregoing exceptions."

*S. B. Ives, Jr.*, for the defendant.

*C. Allen*, Attorney General, for the Commonwealth.

CHAPMAN, C. J.   After certain evidence had been put in without objection, tending to prove that the fire was set by means of a box containing a lighted candle and a quantity of combustible material ; that the box and its contents were prepared for incendiary purposes, and were not adapted to any other purpose ; and tending also to prove that it was made at the defendant's shop, where he had been at work secretly : the letter was admitted, subject to the defendant's objection.   The evidence tended to show that it was in the defendant's handwriting.   It was dated January 11 ; and the fire was set on the 16th.   It contained a statement that the writer and another person had been engaged in setting fires to buildings by means of boxes ; that they expected to receive more of such boxes for incendiary purposes, an.

to use them for setting more fires and burning other buildings. It also refers to the burning of a church and a hotel by the same persons, and states the motive which had induced them to commit the offences already perpetrated and under which they were about to do the acts threatened. The admission of this letter was objected to; and it is contended that, even if a part of it is admissible, those parts which relate to the commission of other offences should have been rejected.

Certain other evidence was admitted, relating to what is called box No. 2, which it is contended should have been rejected on the same ground, namely, that it relates to other offences.

This box was found nearly a month before the alleged fire, in the rear of Harris Street Church. The evidence tended to show that it was like the box which was used to set the alleged fire, and was made at the defendant's shop. Witnesses who were skilled in woodwork were called, who had examined a block contained in box No. 2, and had compared it with a stick found in the defendant's shop, and were allowed to state their opinion that these pieces were originally parts of the same stick, and had been separated from each other. This evidence was objected to. But the court are of opinion that this is a subject in respect to which men of skill and experience may become expert, and that the jury may be properly aided by their opinions. The evidence was properly admitted.

The jury were carefully instructed in regard to the use to be made of this box and block, to wit, that if the jury should be satisfied that the defendant made them, the evidence was not to be used to show that he made the box used at the alleged fire, but only to show that he possessed the requisite skill, materials, tools and opportunity to have made it, and that this is its sole use, unless the jury should find, in the one, such marks as show that one hand must have made both.

The objection to all this evidence respecting the box No. 2, and the allusions to other offences contained in the letter, is urged upon the ground of a well established principle, that evidence which merely tends to prove that the defendant has committed some other similar offence, or which tends to prove facts that are

merely collateral, is inadmissible. The principle is, that all the evidence admitted must be pertinent to the point in issue. But if it be pertinent to this point, and tends to prove the crime alleged, it is not to be rejected, though it also tends to prove the commission of other crimes, or to establish collateral facts. Thus, in *Commonwealth* v. *Tuckerman*, 10 Gray, 173, 197, the defendant had prepared a paper in which he stated a large number of embezzlements which he had committed, and which were other than those alleged; but one of the items was one of the alleged embezzlements; and it was held that the whole paper was admissible. It was also held that other embezzlements than those alleged might be proved, as tending to establish the motive with which the defendant took the money alleged; the acts being so connected that the jury might find that the same intent applied to all of them.

In that case the principle is affirmed which is stated in *Commonwealth* v. *Merriam*, 14 Pick. 518, that evidence which tends to prove collateral facts is admissible, if it has a natural tendency to establish the fact in controversy, or if it has a natural tendency to corroborate other direct evidence in the case. The other cases there cited also illustrate the same principle. It was on this principle that evidence was admitted in *Commonwealth* v. *Ferrigan*, 44 Penn. State, 386, in a trial for murder, that an adulterous intercourse between the wife of the deceased and the prisoner had existed and continued to near the time of the homicide. The one crime furnished a motive for the other. In *People* v. *Wood*, 3 Parker Crim. Cas. 681, which was a trial for murder, proof of other crimes than that alleged, but connected with it by unity of plot and design, and influenced by a single motive, was held admissible. In *Stout* v. *People*, 4 Parker Crim. Cas. 71, it was held that it was not a valid objection to evidence otherwise competent, that it would tend to prove the prisoner guilty of a distinct and different felony.

The defendant's counsel relies upon the expression of the court in *Commonwealth* v. *Williams*, 2 Cush. 582, that they do not sanction the admission of evidence merely tending to show that the defendant had in his possession instruments adapted to the

commission of other crimes.  But the evidence in this case did not merely tend to show this; it tended to show that the defendant possessed the requisite skill, materials, tools and opportunity to have made the box used to set the alleged fire; and in connection with the letter it tended to show that the defendant made both boxes with the single motive there stated.  It tended to prove a use of his shop for the purpose of preparing boxes and materials for setting incendiary fires, including the fire alleged in the same place, and all instigated by one motive.  In *Commonwealth* v. *Wilson*, 2 Cush. 590, the evidence respecting the key was held inadmissible, because it related to a distinct and independent transaction, not connected with the offence on trial.  In *Hill's case*, 20 Howell St. Tr. 1317, 1355, evidence that the prisoner knew how to make the preparation of the combustibles that were used for setting the alleged fire was held to be material.  It may also be shown that he possessed materials capable of being converted into instruments of the offence, including the means of their production, or that he made preparations for the commission of such a crime.  Burrill on Circ. Ev. 260, 345.

Upon the principles above stated, we think all the evidence was properly admitted, and the instructions were sufficiently favorable to the defendant.

As to the *alibi*, the judge stated a proposition at first, which is abstractly true as applied to the position of the defendant's counsel that the proof of it was conclusive, and that it was so strong as to leave a reasonable doubt in the minds of the jury.  The proposition was, in substance, that if the defendant sought to establish the fact that he was at a particular place at a particular time, the burden of proof was upon him.  But he modified this statement in respect to its bearing upon the burden of proof which was upon the government to establish the alleged fact that the defendant was present at the fire.  The substance of the whole ruling was, that if the evidence of the defendant which tended to prove an *alibi* was such that, taken together with the other evidence, the jury were left in reasonable doubt as to whether the defendant was present at the alleged fire, they should acquit him.  We cannot see that he has any ground to object to this ruling, for it left the

evidence which tended to prove the *alibi*, even if it failed to establish it, to have its full effect in bringing into doubt the evidence tending to prove the defendant's presence at the fire. We do not think that the instruction, taken together — the first part of it being so essentially modified by the last — violated any of the principles stated in *Wilder* v. *Cowles*, 100 Mass. 487.

*Exceptions overruled.*