COMMONWEALTH *vs.* ARTHUR E. RUSSELL.

Suffolk.   December 10, 1973. — May 23, 1974.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Evidence,* Relevancy and materiality, Judicial discretion, Cumulative, Corroborative, Illustrative exhibit.

At the trial of an indictment for manslaughter, committed by stabbing with a weapon which was never recovered, there was no abuse of discretion in admitting, as relevant to show the defendant's possession of the means to commit the crime and as merely cumulative of other evidence, testimony of a witness that two weeks before the crime he had been with the defendant at a store when the latter purchased a knife which the witness described [294-296]; or in admitting, as corroborative of such testimony of the witness, his further testimony that a few days after the crime he had been with a police officer at the same store when the officer purchased a knife similar to that purchased by the defendant [296-297]; or in admitting in evidence the knife purchased by the officer to illustrate the testimony of the witness [297-298].

INDICTMENT found and returned in the Superior Court on December 2, 1971.

The case was tried before *Dimond*, J.

*Francis X. Bellotti*, for the defendant, submitted a brief.

*Thomas F. Reardon*, Assistant District Attorney (*Robert J. McKenna, Jr.*, Legal Assistant to the District Attorney, with him) for the Commonwealth.

KEVILLE, J.  The defendant was indicted for manslaughter and found guilty by a jury after a trial made subject to the provisions of G. L. c. 278, §§ 33A-33G. There was evidence that on the evening of October 16, 1971, Paul Desmond, twenty-three years old, a resident of Charlestown, while walking along Main Street, was forced into a fist fight by a William Kelly.  Two of Kelly's friends, John Burke and the defendant Arthur Russell, joined the fight.  Kelly, Burke and Russell had come from a party where liquor had been served.  In the course of the ensuing fight Desmond received three stab wounds inflicted by a sharp instrument from which he died later that night.  The weapon was not recovered. The testimony of several witnesses, relating to incidents which took place both before and after the fight, linked the defendant to the stabbing.

1. The first of the defendant's three assignments of error is directed to the testimony of Stephen Burke, a brother of John Burke.  Stephen testified that two weeks prior to the stabbing he had accompanied the defendant to a store on Canal Street in Boston where the defendant had purchased a knife for $1.59.  He described the knife as having a blade about "three or four inches" long and the markings "Saber" and "Barlow" on either side of the handle.  At a bench conference before this testimony was given, the judge, in the exercise of his discretion, ruled that he would admit the testimony inasmuch as it concerned possession of a weapon by the defendant within a reasonable period of time prior to the stabbing.  The defendant asserts that his possession of the

knife two weeks before the commission of the crime was too remote in point of time to be relevant to the question of his having had a weapon in his possession on the night the offense was committed and that he was thus prejudiced in being portrayed to the jury as a man of violent disposition.

The judge acted within the exercise of sound judicial discretion in admitting this testimony. The fact that the defendant had bought a knife two weeks before the assault was relevant to show that he possessed means with which to commit the crime. *Commonwealth* v. *Choate,* 105 Mass. 451, 457-459 (1870). Wharton's Criminal Evidence (13th ed. 1972) § 157. Proximity to the crime in point of time is an element to be considered in viewing the probative value of testimony, and it is a factor which should be left largely to the discretion of the judge. *Aldrich* v. *Aldrich,* 215 Mass. 164, 168 (1913). Evidence of a defendant's possession of means to commit a crime one month before the event was held to be admissible in *Commonwealth* v. *Choate, supra,* at 457, several hours before the event in *Commonwealth* v. *Roach,* 108 Mass. 289 (1871), and twelve months after the crime was committed in *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 229 (1967). The judge could properly have concluded that the relevance and probative value of this testimony outweighed the possibility of prejudice to the defendant. *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279 (1962), cert. den. 371 U. S. 852 (1962). Moreover, the judge charged the jury that they should consider this testimony only on the question whether the defendant possessed means to commit the stabbing. The judge instructed them that "[t]he earlier possession of the knife is not to be regarded as evidence of any tendency of the defendant toward violence, or of any plan or design to commit an assault, and is not in itself proof of the stabbing." His careful instructions minimized any possibility of prejudice to the defendant.

The witness William Kelly testified that the defendant had a knife in his hands at the party shortly before the stabbing. The defendant, on cross-examination, admitted that he purchased a knife and offered the explanation that he had thrown the knife away after the tip had broken off while he was using it to open cartons for the purpose of pilfering merchandise on the docks where he worked part time as a longshoreman. It was for the collective wisdom of the jury to decide whether the defendant's story was believable.

A witness, Remy, who had given the defendant a ride in his automobile shortly after the crime, testified that he had then seen a bloody knife in the defendant's left hand and the defendant's arms covered with blood. In view of the testimony of Kelly, Remy and the defendant, Stephen Burke's testimony with respect to the defendant's possession of a knife was simply cumulative and its admission was not error. *Commonwealth* v. *Gliniecki*, 339 Mass. 464, 469 (1959). *Commonwealth* v. *Zezima*, 365 Mass. 238, 242 (1974).

2. The defendant next assigns as error the admission of Stephen Burke's testimony that on October 20, 1971, a few days after the crime, he had accompanied a police detective to the same Boston store on Canal Street. There the detective had purchased a knife for $1.59, which was the same kind of knife, with the same markings except that the handle was of a different color from that of the knife purchased earlier by the defendant in Stephen Burke's company. The judge had stated at a bench conference preceding this testimony that he would permit Stephen to testify to the purchase of the second knife as corroborative of his previous testimony. There was no error in this ruling. It was within the discretion of the judge to permit testimony of facts and circumstances corroborative of the witness' testimony. *Commonwealth* v. *Bishop*, 165 Mass. 148, 152 (1896). *Commonwealth* v. *Sacco*, 255 Mass. 369, 441 (1926). *Nelson* v. *Hamlin*, 258 Mass. 331, 341 (1927). *Common-*

*wealth* v. *Galvin,* 310 Mass. 733, 747 (1942), and cases cited.

The judge was careful to instruct the jury that Stephen Burke's testimony on this point was to be considered by them only "for such corroborative weight as [they might] see fit to give it with respect to the witness' earlier testimony about the purchase of the knife two weeks before October 16." It is the rule that the jury must be presumed to have followed the instructions of the judge. *Commonwealth* v. *Bellino,* 320 Mass. 635, 645 (1947). See *Commonwealth* v. *Crehan,* 345 Mass. 609, 613 (1963).

3. The final error assigned by the defendant related to the admission in evidence of the knife which was purchased by the police detective in the company of Stephen Burke as illustrative of his testimony. When the knife was admitted in evidence, the judge gave the jury a limiting instruction that its admission was solely for the purpose of illustrating the earlier testimony of Stephen Burke regarding the purchase of the knife by the defendant and only for such weight as the jury saw fit to give to it. In his charge to the jury the judge explicitly limited the purpose for which the knife was admitted in evidence: "It is not contended and was not accepted as an exhibit on the basis that it was this knife that killed Paul Desmond. This knife is in the case simply to illustrate the testimony of Stephen Burke that it was this kind of knife, as I recall his testimony, that Mr. Russell was said to have bought at Tent City several weeks, as I recall, before the incident."

Standards for admission in evidence of exhibits illustrative of testimony are set forth in *Everson* v. *Casualty Co. of America,* 208 Mass. 214, 220-221 (1911). In that case the court sustained the admission of a model of a door under which the plaintiff was injured, holding that the admission was subject to the discretion of the trial judge after a determination that the evidence "throws sufficient light upon the issue to be helpful to the jury in reaching

their verdict." Materials found in a defendant's building similar to some found wrapped around the deceased have been admitted in evidence as tending to show that the defendant had access to them. *Commonwealth* v. *Bartolini,* 299 Mass. 503, 511-512 (1938), cert. den. 304 U. S. 565 (1938). In the case at bar, although the weapon itself was never recovered, the testimony of Stephen Burke that the defendant had previously purchased a knife, coupled with the admission in evidence of a similar knife as an illustration, tended to shed light upon the question whether the defendant had had access to a weapon which the jury could have believed, from all the other evidence in the case, was capable of inflicting the wounds which killed the victim. The evidence was relevant, and since the judge's instructions carefully limited the purpose for which the knife was offered in evidence, we find no abuse in the exercise of the judge's discretion. *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279 (1962).

*Judgment affirmed.*